1
2
3
4
5

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

6
7

AMY CONVERSE, on her own behalf
and on behalf of others similarly
situated,

                    Plaintiff,

        v.

VIZIO, INC. a California corporation,

                    Defendant.

CASE NO. C17-5897 BHS

ORDER DENYING PLAINTIFF'S
MOTION FOR CLASS
CERTIFICATION

13

This matter comes before the Court on Plaintiff Amy Converse's ("Converse")

motion for class certification. Dkt. 67. The Court has considered the pleadings filed in

support of and in opposition to the motion and the remainder of the file and hereby denies

the motion for the reasons stated herein.

## I.   PROCEDURAL HISTORY

On October 31, 2017, Plaintiff Cody Brenner ("Brenner") filed a complaint

against Defendant Vizio, Inc. ("Vizio") asserting numerous causes of action on behalf of

himself and others similarly situated. Dkt. 1. On February 12, 2018, Vizio filed a motion

to dismiss. Dkt. 27. On May 16, 2018, the Court granted the motion, dismissed claims

that alleged violations of laws of states other than Washington with prejudice, dismissed the remaining claims without prejudice, and granted leave to amend. Dkt. 34.

On June 1, 2018, Brenner filed a second amended complaint ("SAC") asserting eight causes of action as follows: (1) breach of contract; (2) unjust enrichment; (3) negligent and fraudulent misrepresentation; (4) negligence, gross negligence, willful and wonton conduct: design and defect; (5) breach of the implied warranty of merchantability; (6) violation of California's Consumer Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.*; (7) violation of California Business and Professions Code § 17200, *et seq.*; and (8) violation of Washington's Unfair Business Practices – Consumer Protection Act, RCW Chapter 19.86 ("CPA"). Dkt. 35.

On June 15, 2018, Vizio moved to dismiss and to strike. Dkt. 37. On September 24, 2018, the Court granted the motion in part, dismissing Brenner's fourth, fifth, sixth, and seventh claims for relief. Dkt. 45. On December 11, 2018, the Court granted the parties' stipulated motion to file a third amended complaint ("TAC") substituting Converse as putative class representative. Dkt. 53. The TAC reasserted the remaining claims for (1) breach of contract; (2) unjust enrichment, (3) negligent and fraudulent misrepresentation, and (4) violation of Washington's CPA. Dkt. 52-1.

On May 24, 2019, Converse moved to certify the class. Dkt. 67. Converse proposes certifying a class with the following definition:

> All persons in the United States of America and its territories who purchased new, one of the following model numbers of VIZIO VIA Smart TVs E241i-A1, E241i-A1W, E291i-A1, E320i-A0, E420d-A0, , E420i-A0, E420i-A1, E470i-A0, E500d-A0, E500i-A0, E550i-A0E, E551d-A0, E551i-A2, E601i-A3, E552VLE, E3D320VX, E3D420VX, E3D470VX,

M420KD, M3D470KDE, M3D550KDE, M3D550SL, M3D650SV, M3D651SV, E390i-A1*, E500i-A1*, E550i-A0*, E650i-A2*, and E701i-A3*.

*Id.* at 11.[1] Converse explains that the model numbers marked with an asterisk were applied to two types of TVs – the VIA type and the VIA+ type. *Id.* VIA TVs lost YouTube functionality, but VIA+ TVs did not. *Id.* Converse thus proposes that putative class members with these model numbers would need to "confirm that they have a VIA Smart TV by affirming that their devices no longer have access to YouTube." *Id.* Vizio calculates that the proposed class contains approximately 4,300,323 members excluding "crossover" model numbers (apparently referring to the model numbers with an asterisk). Dkt. 92 at 10 n.1 (citing Dkt. 67 at 12).

On July 8, 2019, Vizio responded to Converse's motion. Dkt. 92. On August 6, 2019, Converse replied. Dkt. 109. On August 7, 2019, Vizio filed a notice of intent to surreply, Dkt. 111, and surreplied on August 8, 2019, Dkt. 112. On January 17, 2020, Converse filed a notice of supplemental authority. Dkt. 113.

## II.   FACTUAL BACKGROUND

Converse's claims are based on the assertion that the YouTube application no longer works on her Vizio TV. When Converse purchased her TV in January 2014, she was able to stream YouTube content over the internet to the TV. Converse's TV uses flash-based technology. Beginning in 2013, Vizio and other manufacturers had begun producing TVs with a newer HTML5 application programming interface technology

---

[1] ECF page numbering.

which aligned with applications such as YouTube's technological updates. The parties dispute whether and at what point Vizio knew that YouTube would cease supporting TVs like Converse's which used the older flash-based technology. YouTube permanently stopped functioning as an application on Converse's TV on July 26, 2017.

Converse alleges that Vizio advertised and marketed that its TVs came with the ability to access applications such as YouTube when in fact, Vizio knew that in YouTube's terms of service YouTube expressly reserved the right to discontinue service at any time for any reason. Dkt. 54, ¶¶ 23–33, 35–37. Converse alleges that Vizio did not pass this information on to its customers. *Id.* ¶¶ 38–39. In other words, Converse alleges that Vizio made access to YouTube and other streaming applications a core part of its marketing strategy without informing consumers that YouTube may stop working on the TVs in the future and that YouTube could in its discretion stop making its content available on the TVs at any time. *Id.* ¶¶ 40–50.

It is undisputed that each box for a TV within the proposed class definition featured the YouTube logo and a disclaimer. Though the disclaimers varied slightly, Converse argues that "at best" the disclaimer stated "[a]pplications pictured, described on this package or in its accompanying documentation may not be available, or may provide different functionality, content or services, at the time of purchase. Applications are subject to future updates, and/or modifications without notice." Dkt. 67 at 7 (quoting Dkt. 68-1, Ex. 34).[2] Another disclaimer in the owner's manual, accessible once the TV was set

---

[2] Vizio agrees that the disclaimers had slight variations but argues that all packages contained the text in the following two disclaimers (except for the 2013 version of Model #470i-

up, stated that applications "are subject to change, interruption, suspension (including termination) at any time and for various reasons. VIZIO makes no warranties or representations that any particular VIA Service will be accessible, available, function in any particular manner, or function at all." *Id.* (citing Dkt. 68-1, Exs. 20, 21).

Both parties submit evidence about the impact of the end of YouTube access on the approximately 4.3 million putative class members. Converse cites an email sent in March 2017 from Vizio's ███████████████████████ to another Vizio employee (after receiving a YouTube notification that YouTube would no longer function on Vizio's flash-based TVs) stating that █████████████████████████████████████ ████████████████████" Dkt. 67 at 10 (citing Dkt. 68-1, Ex. 32). Vizio argues, citing the declaration of its Director of Engineering and Technology, that as of June 2017 only ███ ████████ VIA TVs were connected to the internet. Dkt. 92 at 15 (citing Dkt. 95). Vizio calculated this number based on the number of VIA TVs which had accessed the internet in the past three months and explains that though the total population of VIA TVs with YouTube was approximately 5.7 million, 1.4 million are excluded from the class definition because they did not feature the YouTube logo on the box. *Id.* at 15 & n.5 (citing Dkt. 95).

---

A0 which contained the first disclaimer only): (1) "All product specifications, functionality, features, configurations, performance, design and other product information described herein are subject to change without notice." and (2) "Applications pictured or described herein or in its accompanying documentation may not be available, or may provide different functionality, content or service, at the time of purchase. Applications are subject to future updates and/or modifications without notice." Dkt. 92 at 13–14, 14 n.3 (citing Dkt. 97).

Converse alleges that Vizio's advice to her and owners of similar TVs is to buy a new TV or buy an add-on device that will work with HTML5. Dkt. 54, ⁋ 58. Converse also alleges that now Vizio "informs the consuming public about the potential loss in third-party app functionality in its Smart TVs, both online, in its in-store displays, and on its packaging." *Id.* ⁋ 62.

## III. DISCUSSION

### A. Standard

"Class certification is governed by Federal Rule of Civil Procedure 23." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 345 (2011). "As the party seeking class certification, [Plaintiff] bears the burden of demonstrating that [she] has met each of the four requirements of Rule 23(a) and at least one of the requirements of Rule 23(b)." *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001), *amended by* 273 F.3d 1266 (9th Cir. 2001). The four requirements of Rule 23(a) are: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. *Parsons v. Ryan*, 754 F.3d 657, 674 (9th Cir. 2014).

"Rule 23 does not set forth a mere pleading standard." *Dukes*, 564 U.S. at 350. Rather, "[a] party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, etc." *Id.* Before certifying a class, the Court must conduct a "rigorous analysis" to determine whether Converse has met the requirements of Rule 23. *Zinser*, 253 F.3d at 1186.

Here, Converse seeks certification under Rule 23(b)(3). Dkt. 65 at 8. A class action may be maintained under Rule 23(b)(3) if "questions of law or fact common to class members predominate over any questions affecting only individual members," and if "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

**B.    Merits**

Converse's proposed class definition captures purchasers whose TVs lost access to YouTube. Dkt. 67 at 11. Vizio's primary argument in opposition to certification is that individual issues will predominate because Converse's claims require individual inquiries into what individual class members knew and believed about their own TV's access to YouTube. Vizio also argues that any nationwide class is not manageable or superior "because [Converse] appears to concede that the laws of 50 states will apply to the class, and she has no workable plan for trying claims under those laws." Dkt. 92 at 28.

Converse does not submit a specific request for the Court to find Washington law should apply to her breach of contract, unjust enrichment, and misrepresentation claims, but she relies on Washington authorities to define the elements of each claim that she would have to prove if the case went to trial. Converse does seek to certify a Washington-only CPA class. By addressing problems with predominance under Washington law as the first part of its motion, Vizio appears to argue that even if the Court was to construe Converse's motion as including a request to find Washington law applicable and find in her favor, the Court would have to find that none of Converse's claims may be certified due to predominance issues. For her other claims, the Court will proceed by first

1    evaluating how the claim would fare under Washington law and will consider the

2    proposed subclasses if relevant.

3        **1.    Breach of Contract**

4        In granting in part Vizio's first motion to dismiss, the Court explained that the

5    putative class complaint failed to clarify what common law was violated as to the breach

6    of contract claim and found clarification necessary. Dkt. 34 at 6. The TAC appears to

7    have the same issue, alleging that Vizio breached the agreement it made with putative

8    class members "under both state and federal common law." Dkt. 54, ⁋ 92.[3] However,

9    Converse's motion cites authority applying Washington law for the proposition that "[a]

10   contract requires offer, acceptance and consideration." Dkt. 67 at 20 (quoting *Estes v.*

11   *Wells Fargo Home Mortg.*, 2015 WL 362904 at *4 (W.D. Wash. Jan 27, 2015)).

12   Converse then proceeds to her argument that the elements of breach of contract are

13   similar across states and thus nationwide classes may be certified in breach of contract

14   claims. *Id.*

15       Looking at the particular facts of Converse's claim, the Court finds that she alleges

16   an implied contract between Vizio and the putative class members without persuading the

17   Court that the terms of an implied contract can reasonably be assumed to be the same

18   when considering millions of individual implied contracts between individual consumers

19   and a company.

20

21   _____

22       [3] The TAC also suggests one nineteen-state subclass and one twenty-state subclass
     comprised of states with common elements for a breach of contract claim. Dkt. 54 at 94–95.

Under Washington law, "[a] contract implied in fact arises from facts and circumstances indicating a mutual consent and intent to contract." *Seashore Villa Ass'n v. Huggland Family Ltd. P'ship*, 163 Wn. App. 531, 545 (2011) (citing *Young v. Young*, 164 Wn.2d 477, 485–86 (2008)). The Court previously found that the facts alleged in the SAC could establish a contract implied in fact, Dkt. 45 at 5, and Converse makes no argument that the Court should now conclude instead that the terms were more than implied. Converse argues that Vizio offered access to YouTube through the logo on its packaging, consumers accepted the offer when they purchased the TVs, and the "duty to continue to provide access to YouTube was universally breached by the June 2017 depreciation of the app causing the value of the VIA smart TVs to drop by losing access to one of the top two video streaming apps." Dkt. 67 at 21.

Vizio argues that to create an implied contract, "the terms assented to must be sufficiently definite." Dkt. 92 at 25 (quoting *Keystone Land & Dev. Co. v. Xerox Corp.*, 152 Wn.2d 171, 178 (2004)). Vizio cites *Sandeman v. Sayers*, 50 Wn.2d 539, 541 (1957) (citing *Schuele v. Schuele*, 21 Wn.2d 609 (1944)) which states that "[i]f an offer is so indefinite that a court cannot decide just what it means, and fix exactly the legal liability of the parties, its acceptance cannot result in an enforceable agreement." *Id*. Vizio also argues the Court should follow *Bushbeck v. Chicago Title Ins. Co.*, Case No. C08-0755JLR, 2011 WL 13100725 (W.D. Wash. 2011) ("*Bushbeck*"). *Id*. In *Bushbeck*, the plaintiffs alleged that when their escrow company charged a reonveyance processing fee but promised to refund the fee if another party performed the reconveyance processing, "it created a contract implied in fact with each class member that it would either perform

the reconveyance processing or refund the fees. *Bushbeck*, 2011 WL 13100725 at *11. The Court concluded that individual issues would predominate as to breach of the implied contract because the terms of the contract between the escrow company and each plaintiff "particularly regarding expectations of a refund and timing of the refund, if any, will require individualized proof." *Id*. at *12.

Vizio argues that (1) many putative class members may not have seen the YouTube logo before making their purchase particularly if they purchased their TV online, (2) many plaintiffs may have seen Vizio's disclaimers either on the box or in the User Manual which would inform their understanding of their agreement with Vizio, and (3) consumer expectations about how long YouTube would be available on their TV may vary. Dkt. 92 at 25–26. Converse counters that Vizio has put forward no evidence from the putative class showing that they saw or believed varying things. Dkt. 109 at 9.

While Converse is correct that Vizio provided no declarations from putative class members to show their varying contractual understandings, the Court does not find the terms of the implied contract as Converse describes are sufficiently definite such that it may "fix exactly the legal liability of the parties." *Sandeman*, 50 Wn.2d at 541. For example, Vizio's obligation under the implied contract Converse describes in her motion has no end point such that the Court may assess whether the alleged breach took place within the contract term. In the complaint, Converse alleges that class members believed YouTube would be available "for the reasonable life of the product," Dkt. 54, ¶ 85, but provides no reason to conclude that class members would share a common understanding of that term such that it definitively extended beyond July 26, 2017 when the breach

occurred. At a more basic level, Converse provides no authority for the proposition that the terms of an implied contract may be identified using a "reasonable consumer" or other generalized or objective standard such that they may be assumed to be shared among the millions of putative class members.[4] Similar to the Court in *Bushbeck*, the Court finds that individualized proof would be required regarding expectations of Vizio's actions to secure access to YouTube through its TVs and the duration of such a promise. *Bushbeck*, 2011 WL 13100725 at *12.

Converse is the party seeking certification and it is her burden to show she has met the certification requirements. *Zinser*, 253 F.3d at 1186.[5] While there may be questions common to the class in this implied contract claim, such as whether the end of YouTube service in 2017 constituted a breach, the Court finds that actually answering that question would require identifying the material terms of the contract which would have to be conducted on an individual basis. Individual issues would thus predominate over common issues. Any subclass Converse is qualified to represent as a Washington resident would appear to suffer from the same issues, so the Court denies the motion to certify as to the breach of contract claim.

---

[4] Converse cites *Mortimore v. F.D.I.C.*, 197 F.R.D. 432, 438 (W.D. Wash. 2000) as an example of a breach of contract class certified on a nationwide basis. Dkt. 67 at 20. The Court finds *Mortimore* distinguishable because it involved a form contract, which by definition features fixed terms. *See Mortimore*, 197 F.R.D. at 438 ("[s]ince this case involves the use of form contracts, it is particularly appropriate to use the class action procedure.")

[5] Converse also argues that Vizio's opposition fails to argue her breach of contract claim should not be certified, so the Court should certify this claim. Dkt. 109 at 8 n.2. The Court finds that Vizio's cited arguments constitute opposition.

### 2.     Unjust Enrichment

Under Washington law, "[u]njust enrichment is the method of recovery for the value of the benefit retained absent any contractual relationship because notions of fairness and justice require it." *Young*, 164 Wn.2d at 484. The elements are: "(1) the defendant receives a benefit, (2) the received benefit is at the plaintiff's expense, and (3) the circumstances make it unjust for the defendant to retain the benefit without payment." *Id*. at 484–85.

The parties primarily dispute the legal standard for the third element and whether Converse has demonstrated that she can prove that element on a classwide basis. Converse argues that each element is supported by common, class-wide proof: (1) "all class members traded some amount of money" for their TVs, which were advertised as coming with YouTube, (2) Vizio advertised YouTube and accepted payment, and (3) a common legal question exists whether it is equitable for Vizio to retain the payments based on the adequacy of the disclaimer. Dkt. 67 at 22–23. She argues that the appropriate remedy if the legal question is answered in the class's favor is either to provide a streaming device to each class member or to provide the cost of such a device. *Id*. Vizio argues that individualized inquiry is required to determine equity as to each putative class member for a number of reasons including because some class members likely purchased their TVs without relying on the YouTube logo and some stopped using their TVs to access YouTube before the application ceased functioning. Dkt. 92 at 24 (citing *Weidenhamer v. Expedia, Inc.*, No. C14–1239RAJ, 2015 WL 7157282, at *12 (W.D. Wash. Nov. 13, 2014) ("*Weidenhamer*"); *Kelley v. Microsoft Corp.*, 251 F.R.D.

544, 559 (W.D. Wash. 2008) ("*Kelley*"); *In re Celexa & Lexapro Mktg. & Sales Practices Litig.*, 325 F.R.D. 529, 541 (D. Mass. 2017)).

In *Weidenhamer*, the Court explained that "other courts in this district have suggested there is a causation-like inquiry for certain kinds of unjust enrichment claims." *Weidenhamer*, 2015 WL 7157282 at *12 (citing *Kelley*, 251 F.R.D. at 559; *In re Phenylpropanolamine (PPA) Products Liab. Litig.*, 214 F.R.D. 614, 620 n.8 (W.D. Wash. 2003)). It further explained that courts in this district have found deceptive advertising theories of consumer fraud require the trier of fact to determine whether each class member was actually deceived. *Id.* (citing *Kelley*, 251 F.R.D. at 558; *Blough v. Shea Homes, Inc.*, No. 2:12–CV–01493 RSM, 2014 WL 3694231, at *12 (W.D. Wash. July 23, 2014) ("*Blough*") (considering a CPA claim)). Converse argues the question "is not whether every class member actually saw the misrepresentation and omission, it is whether they were exposed to it." Dkt. 109 at 3. Converse argues that the exposure standard represents the law of the circuit but cites only cases examining California law in support of this proposition. Dkt. 109 at 3 (citing *Astiana v. Kashi Co.*, 291 F.R.D. 493 (S.D. Cal. 2013) (finding the plaintiff's quasi-contract claim's common issues predominated over individual issues for a California class); *Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 591, 595–96 (9th Cir. 2012) (reviewing California law to determine whether the advertising misrepresentation at issue justified a presumption of reliance); *In re Ferrero Litig.*, 278 F.R.D. 552, 560 (S.D. Cal. 2011) (finding plaintiffs presented sufficient facts to show defendant made material misrepresentation in violation of California law and certifying California-only class); *Johns v. Bayer Corp.*, 280 F.R.D.

551, 557 (S.D. Cal. 2012) ("Importantly, California consumer protection laws take an objective approach of the ***reasonable*** consumer, not the particular consumer.") (citations omitted)). While the Court in *Weidenhamer* did consider whether putative class members were exposed to differing false statements, it did so in the context of finding one barrier to predominance was that "not every customer saw the alleged misrepresentations" because customers had to click through to view the fees at issue. *Weidenhamer*, 2015 WL 7157282, at *11–12.

Converse next argues that Vizio failed to submit admissible evidence that any member of the putative class made a purchase without seeing a YouTube representation. Dkt. 109 at 3, 4. Converse does not provide authority for the proposition that the Court may only consider the defendant's admissible evidence at the certification stage, and *Sali v. Corona Reg'l Med. Ctr.*, 909 F.3d 996, 1006 (9th Cir. 2018) ("*Sali*") provides that at least as to plaintiff's evidence, admissibility is not required. *Sali*, 909 F.3d at 1006 (at certification, "the district court need not dispense with the standards of admissibility entirely" and "may consider whether the plaintiff's proof is, or will likely lead to, admissible evidence."). Therefore, the Court considers those parts of the record that are at least likely to lead to admissible evidence on the issue of what YouTube advertisements putative class members may have seen when purchasing their TVs.[6]

---

[6] Converse submits a supplemental declaration from counsel, Jacob Karczewski, arguing that the evidence Vizio submits on the issue of in-store and online displays is inadmissible for reasons including lack of foundation and statements not supported by personal knowledge. *See* Dkt. 110, ¶¶ 9–14. Vizio surreplied and asked the Court to strike paragraphs 8 through 20 of this declaration, arguing that Converse sought and was refused permission to file an overlength reply brief on these issues. Dkt. 112. Vizio argues the referenced paragraphs improperly contain legal

The parties do not dispute that each TV within the class definition was sold with a box that featured the YouTube logo. They do dispute whether in-store purchasers may have seen their TV's box before purchasing and dispute whether online purchasers may have seen any YouTube representation before purchasing. Converse provides examples of the YouTube logo being featured in online advertising including in images on retailer websites and on social media. Dkt. 67 at 6 (citing Dkt. 68-1, Ex. 1 at 119–20, 137–38, Ex. 13, Ex. 19). Vizio argues that some retailers such as ███ displayed TVs on a wall in their stores and retrieved boxes from the back of the store only after a customer had selected a model, so not all customers may have examined the box before purchasing. Dkt. 92 at 10 (citing Dkt. 96, Declaration of Carlos Angulo, Vizio's Director of Product Marketing ("Angulo"), ¶ 9). Vizio similarly argues that some retailers stacked the boxes "'pizza style' so that the large panels of the box [which featured the logo] were not visible." *Id.* (citing Dkt. 96, ¶ 9).

Regarding online depictions, Angulo declared that prior to March 2012, the image Vizio provided to retailers selling the televisions online did not include the YouTube logo. Dkt. 96, ¶ 14. Though the image Vizio provided did include the logo after March 2012, *id.*, Angulo testified as Vizio's corporate representative that Walmart was ███ ███████████████████████████████████████████████████ instead of Vizio's

argument. Dkt. 112 at 2–3. The Court applies the standards on admissibility articulated in *Sali* to both parties and thus does not rely on the Karczewski declaration's admissibility arguments, rendering the motion to strike moot.

1  image which featured the YouTube logo. Dkt. 101-2 at 148–149.[7] Vizio also argues that

2  Best Buy and Amazon did not use Vizio's images at all relevant times. Dkt. 92 at 13

3  (citing Dkt. 93-1 at 15–30, 32–33, 34–35).

4  Therefore, while Converse may be correct that the defendant in *Kelley* submitted

5  more direct evidence that plaintiffs did not see or did not understand the

6  misrepresentations at issue and the defendant in *Weidenhamer* provided evidence the

7  Court credited to conclude the representations plaintiffs did see may have varied

8  innumerably, Dkt. 109 at 4 (citing *Kelley*, 251 F.R.D. at 548–49; *Weidenhamer*, 2015 WL

9  7157282 at *5), there are facts in the record from which it appears many putative class

10  members may not have viewed a YouTube representation before purchasing. To address

11  any question about varying experiences with YouTube representations, Converse argues

12  that class members "could clarify their positions at the merits stage by responding

13  affirmatively to a simple class-wide interrogatory or affidavit thereby identifying

14  themselves as deceived class members." Dkt. 109 at 5.

15  Finally, Converse argues that *Kelley* and *Weidenhamer* are factually

16  distinguishable because in *Weidenhamer*, the Court found that some of the alleged

17  misrepresentations may have been accurate and the Court would have to review millions

18  of transactions to determine which class members were in fact exposed to false

19  statements, and in *Kelley*, the Court found predominating individual inquiries would

20  result from the possibility that consumers were not deceived by or did not care about the

21

22  [7] Deposition transcript page numbering.

misrepresentation at issue, complications which Converse argues are not present in the case at bar. Dkt. 109 at 5–6 (citing *Weidenhamer*, 2015 WL 7157282, at *11; *Kelley*, 251 F.R.D. at 558–59). The Court notes that the facts Converse cites in *Kelley* pertain to the Court's CPA analysis. The Court's unjust enrichment analysis simply explained that though an unjust enrichment claim may be more amenable to common proof than a CPA claim because the focus is on the benefit to the single defendant rather than the harm to the many class members, the trier of fact would still need to conduct individualized inquiries into actual deception if the plaintiffs advanced a deceptive advertising theory. *Kelley*, 251 F.R.D. at 559.

At bottom, the Court finds that Converse's theory of the benefit unjustly conveyed to Vizio suffers from the same issues identified in the *Kelley* litigation which required an evaluation of "whether and how an injustice occurred." *Kelley*, 251 F.R.D. at 559. If the benefit is that the alleged misrepresentation about YouTube caused class members to pay more than the TVs were worth, that benefit could be demonstrated on a classwide basis with evidence that TVs with YouTube sold for more than they otherwise would have. In that case, the benefit conveyed to Vizio is purchases made at an unfairly elevated price. Converse does argue generally that Vizio "charged a premium for access to its VIA Smart TV applications; one of the top two of which was YouTube," and argues (though with respect to proximate cause for her CPA claim) that she "can show that by affirmatively misrepresenting the fact that customers would have access to YouTube when they purchased VIA Smart TVs, VIZIO improperly inflated the price causing injury." Dkt. 67 at 13; Dkt. 109 at 10. However, Converse provides no indication of how

she would demonstrate a price/demand inflation claim on a classwide basis—how she would in fact show this effect for millions of purchases across a variety of retailers over multiple years. While the Court in *Kelley* initially certified an unjust enrichment claim on a price/demand inflation theory, 251 F.R.D. at 559, in a later order it decertified the class when plaintiffs' evidence failed to isolate the specific demand inflation's link to the misrepresentation, *Kelley v. Microsoft Corp.*, No. C07-0475 MJP, 2009 WL 413509, at *9 (W.D. Wash. Feb. 18, 2009).

Therefore, the Court concludes that without some indication of how Converse intends to show Vizio received a price/demand benefit, individual issues about the circumstances of the benefit Vizio received will predominate over the common issue of the disclaimer's adequacy for a class certified on this theory. Moreover, class members "are only entitled to those damages that result from the theory of liability on which the action is premised," and compensation for defects "does not parallel a price inflation theory of liability." *Blough*, 2014 WL 3694231, at *14 (citing *Comcast Corp. v. Behrend*, 569 U.S. 27, 35 (2013)).

The theory that appears more consistent with Converse's arguments and proposed remedy is that Vizio would not have received the benefit of class members' purchases without the alleged misrepresentation, and thus it is unjust for Vizio to retain the purchase price without making class members whole by restoring YouTube functionality. Converse puts forward evidence that (1) YouTube, the only free streaming application, was one of the top two apps used on Vizio TVs at least in 2012, (2) Vizio advertised YouTube on TV packaging and in other advertising, and (3) Vizio's

disclaimer was allegedly inadequate. Dkt. 67 at 5, 5 n.1, 6–7 (citing Dkt. 68-1, Ex. 1 at 158–61, Ex. 7, Ex. 13, Ex. 19, Ex. 34). It is a very close question whether the classmember affidavits Converse suggests would fairly show it is inequitable for Vizio to retain the purchase price without providing class members a streaming device when YouTube was one application out of multiple on the relevant TVs, and class members likely considered other factors when making their purchasing decisions such as screen size, quality, and price. It is questionable whether Converse's evidence is sufficient to conclude under these circumstances that anyone who purchased a Vizio Smart TV did so based on the promise of access to YouTube such that it would be unjust to permit Vizio to refrain from providing a streaming device when access to YouTube has ceased. Further, the Court is skeptical that it is appropriate to permit the class to submit affidavits when this suggestion was first raised in reply, although Vizio did file a surreply which did not address this issue.

As to common questions, Converse alleges that the question common to the class is whether the disclaimer was adequate or not. Without an affidavit, individual questions of deception would predominate over these common questions on the deception theory. Ultimately, the Court finds that even with an affidavit where each class member would affirm they were deceived about what Vizio was representing when it featured the YouTube logo to contradict evidence classmembers did not view the representation, the Court would have insufficient information to determine on a classwide basis that Vizio was unjustly enriched because deception does not establish that the representation influenced the purchasing decision, that the class members had a uniform expectation that

YouTube would be available for the reasonable life of the product and that the reasonable life of the product would extend through July 2017.

### 3. Violation of Washington's CPA

"To prevail on a private CPA claim, a private plaintiff must show (1) an unfair or deceptive act or practice, (2) that occurs in trade or commerce, (3) a public interest, (4) injury to the plaintiff in his or her business or property, and (5) a causal link between the unfair or deceptive act and the injury suffered." *Indoor Billboard/Wa., Inc. v. Integra Telecom of Wa., Inc.*, 162 Wn.2d 59, 74 (2007) (citing *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 784 784–85 (1986)). The parties dispute whether it is possible for Converse to show the last element, causation, on a classwide basis.

To satisfy the causation element when the defendant has made an affirmative misrepresentation of fact, "[a] plaintiff must establish that, but for the defendant's unfair or deceptive practice, the plaintiff would not have suffered an injury." *Indoor Billboard*, 162 Wn.2d at 78–83. While reliance is one way to show proximate cause, "[t]he trier of fact must look at all the facts related to causation; other factors, such as payment for an allegedly deceptive service, may or may not be sufficient to establish causation independent from reliance." *Blough*, 2013 WL 6276450, at *8 (citing *Schnall v. AT&T Wireless Serv's, Inc.*, 171 Wn.2d 260, 277 (2011) (en banc)).

Converse argues she can show causation on a classwide basis through the presumption of reliance Washington courts afford when the plaintiff alleges the defendant's misrepresentation combined omissions and affirmative misrepresentations. Converse frames the question as "by using the YouTube logo on its packaging and

elsewhere and failing to disclose that the app could terminate operating at any time, would a reasonable consumer understand that by purchasing a VIA Smart TV they were also purchasing access to YouTube on that device?" Dkt. 67 at 16.

The Court does not find Converse's claims sufficiently similar to the cases where a presumption of reliance was afforded such that the presumption would be appropriate in this case. For example, the Court found a presumption of reliance was appropriate when a defendant made a combination of omissions and misrepresentations about home furnaces but the plaintiff "*primarily* alleged omissions" and "[p]roof of the omissions will *not* be based upon information each class member received about the furnaces, but on what [the defendant] allegedly concealed in light of what consumers reasonably expect." *Grays Harbor Adventist Christian School v. Carrier Corp.*, 242 F.R.D. 568, 573 (W.D. Wash. 2007). Similarly, the Court found a presumption of reliance was appropriate when the theory of causation was the defendant's omission of information regarding fees on prepaid cash cards. *Reichert v. Keefe Commissary Network, LLC*, 331 F.R.D. 541, 556 (W.D. Wash. 2019). In contrast, in *Blough* when the defendant made an affirmative misrepresentation about construction quality, the Court found a presumption of reliance was not appropriate particularly when the alleged construction quality misrepresentation went to only one aspect "among the many features [of homes the defendant built and sold] that appealed to its purchasers." *Blough*, 2014 WL 3694231 at *12. The Court found that even if it accepted that omissions were primary, "the variations among the purchase experiences, knowledge, and motivations of class members are such that an unmanageable number of mini-trials would result." *Id*. at *14.

While Converse cites *Wolin v. Jaguar Land Rover N. Am.*, *LLC*, 617 F.3d 1168, 1174 (9th Cir. 2010) in support of the proposition that when a defendant's uniform marketing applies to a mass group of consumers, "the defenses and necessary proof overwhelmingly applies to the class as opposed to any individual," Dkt. 67 at 18, *Wolin* analyzed claims about a concealed vehicle alignment geometry defect, an omission, under the consumer protection laws of Michigan and Florida and does not address Washington's proximate cause requirement. Converse also argues courts routinely find predominance satisfied when the relevant misrepresentation and omission appear directly on the packaging, citing six district court cases in support of these arguments. Dkt. 67 at 19. However, each cited case analyzed claims under California law, and Converse does not explain why these cases would influence the Court's analysis of Washington law standards. *See, e.g.*, *Thurston v. Bear Naked, Inc.*, No. 311–CV–02890–H (BGS), 2013 WL 5664985 at *4 (S.D. Cal. July 30, 2013) (under California's Consumer Legal Remedies Act, causation on a classwide basis may be established by materiality); *Lily v. Jamba Juice Co.*, 308 F.R.D. 231, 242 (N.D. Cal. 2014) (claims under California's False Advertising Law and the fraudulent prong of California's Unfair Competition Law are determined by a reasonable consumer standard).

In this case, while it is probable that a reasonable consumer would independently form an expectation that a "smart" TV could access the internet, Converse does not put forward evidence that a reasonable consumer would have formed an expectation about VIA TV's ability to support YouTube absent Vizio's affirmative misrepresentations. Therefore, the Court finds that Converse's claims do not primarily allege omissions and

are not the type of claims which Washington courts have afforded a presumption of reliance.

Vizio argues that without a presumption of reliance, individual causation issues will predominate. Dkt. 92 at 19–20. As noted, Vizio puts forward declarations which suggest some purchasers, particularly online purchasers, did not see a YouTube representation before purchasing. Vizio also argues that its alleged misrepresentations went to only one feature of the product which was not the primary defining feature. Converse counters that "video streaming content was a key component distinguishing VIZIO's Smart TVs, that YouTube was one of the top two apps on its VIA Smart TVs, and that VIZIO uniformly promoted YouTube on those devices in order to entice consumers to choose those devices over all others." Dkt. 109 at 10. The Court agrees with Vizio that Converse's deceptive advertising theory of causation will create predominating individual issues because YouTube was one feature among multiple of the TVs. *See Blough*, 2014 WL 3694231, at *12 (trier of fact would have to decide how much class members relied on misrepresentation, whether purchases were predominantly based on the misrepresentation, and whether and to what extent class members knew about defects concealed by the misrepresentation); *see also Kelley v. Microsoft Corp.*, 395 F. App'x 431, 432 (9th Cir. 2010) (fundamental aspects of product were within the alleged misrepresentation, so case was "unlike instances where the alleged misrepresentation goes only to one feature of the product and there are numerous reasons why a consumer might use the product other than the feature misrepresented.") (citing *Poulos v. Ceasers World, Inc.*, 379 F.3d 654, 655, 667 (9th Cir. 2004)).

1    In reply, Converse presents a somewhat different framing, arguing that the only

2    thing she must show is that deceptive conduct has "'the capacity to deceive a substantial

3    portion of the public.'" Dkt. 109 at 10 (citing *Schnall*, 171 Wn.2d at 279). Whether a

4    deceptive action has the capacity to deceive a substantial portion of the public establishes

5    the first element of a CPA claim, but does not necessarily establish causation. *See*

6    *Schnall*, 171 Wn. 2d at 279 (explaining what establishes a practice is unfair or deceptive

7    as a matter of law before turning to a causation analysis).

8        The Court has already declined to rely on Converse's argument that she can show

9    price inflation—this bare assertion is insufficient to support the "rigorous inquiry"

10   necessary at certification. *Zinser*, 253 F.3d at 1186. Moreover, if causation is shown

11   through price inflation, the class's injury would be overpayment, not the lack of access to

12   YouTube cured by a streaming device Converse argues.

13       Finally, Converse argues that "the most significant fact leading to injury in this

14   case is VIZIO's omission that it knew that YouTube would stop being supported on its

15   VIA Smart TVs . . . yet it actively hid that fact from consumers." Dkt. 109 at 10. Whether

16   Vizio's actions were unfair or deceptive within the meaning of the CPA is certainly a

17   legal issue common to the class. However, without sufficient information to establish that

18   Converse can likely prove loss of access to YouTube caused injury on a classwide basis

19   for consumers who did not view representations about YouTube, who were not motivated

20   to make their purchase based on a representation they did see, or who never or ceased

21   using their TV to access the internet  prior to July 26, 2017, the trier of fact would have to

22   conduct individual inquiries into each class member's knowledge of and expectations

about YouTube access to establish causation. These individual inquiries would predominate over the common question. Thus, the Court denies the motion to certify a Washington-only class as to the CPA claim.

### 4. Negligent and Fraudulent Misrepresentation

Converse argues that the Court should "apply the uniform standards set forth in Restatement (Second) § 552" which have been "adopted by many courts including those of Washington State." Dkt. 67 at 25–26. Reliance is an element of misrepresentation as described in the Restatement and is also an element of misrepresentation as described by Washington courts. "To prevail on either a negligent or intentional misrepresentation claim, [a plaintiff] must prove by clear, cogent, and convincing evidence that he relied on the alleged misrepresentation." *DiNardo v. Wow 1 Day Painting, LLC*, No. C16-1600JLR, 2018 WL 513584, at *7 (W.D. Wash. Jan. 23, 2018) (citing *Elcon Constr., Inc. v. E. Wash. Univ.*, 174 Wn.2d 157, 166 (2012) (en banc); *Ross v. Kirner*, 162 Wn. 2d 493, 499 (2007) (en banc)). For the reasons already discussed, the Court finds that Converse has failed to establish she can show reliance with common evidence such that these issues would not predominate over the common question of misrepresentation. Though Converse informs the Court that she "intends to ask the Court for issue and evidentiary sanctions which could also aid in establishing reliance," Dkt. 109 at 11 n.3, any such relief is speculative at this point and cannot support class certification. Thus, the Court cannot certify this claim as currently proposed.

# IV.  ORDER

Therefore, it is hereby **ORDERED** that Converse's motion for class certification, Dkt. 67, is **DENIED**.

Dated this 13th day of February, 2020.

_____

BENJAMIN H. SETTLE
United States District Judge