UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

AMY CONVERSE, on her own behalf
and on behalf of others similarly
situated,

                    Plaintiff,

        v.

VIZIO, INC. a California corporation,

                    Defendant.

CASE NO. C17-5897 BHS

ORDER DENYING PLAINTIFF'S
MOTION FOR
RECONSIDERATION

This matter comes before the Court on Plaintiff Amy Converse's ("Converse")

motion for reconsideration. Dkt. 117. The Court has considered the pleadings filed in

support of the motion and the remainder of the file and hereby denies the motion for the

reasons stated herein.

## I.   PROCEDURAL HISTORY

Converse, the current named plaintiff in this putative class action, filed the

operative third amended complaint ("TAC") pursuant to stipulation on December 12,

2018. *See* Dkt. 53. The TAC asserted claims for (1) breach of contract; (2) unjust

1  enrichment, (3) negligent and fraudulent misrepresentation, and (4) violation of

2  Washington's Consumer Protection Act ("CPA"). Dkt. 54.

3       On May 24, 2019, Converse moved for class certification. Dkt. 67. Converse

4  proposed certifying a class with the following definition:

5       All persons in the United States of America and its territories who
     purchased new, one of the following model numbers of VIZIO VIA Smart

6       TVs E241i-A1, E241i-A1W, E291i-A1, E320i-A0, E420d-A0, , E420i-A0,
     E420i-A1, E470i-A0, E500d-A0, E500i-A0, E550i-A0E, E551d-A0, E551i-

7       A2, E601i-A3, E552VLE, E3D320VX, E3D420VX, E3D470VX,
     M420KD, M3D470KDE, M3D550KDE, M3D550SL, M3D650SV,

8       M3D651SV, E390i-A1*, E500i-A1*, E550i-A0*, E650i-A2*, and E701i-
     A3*.

9

10  *Id.* at 11.[1] On February 13, 2020, the Court denied the motion. Dkt. 115. On February 27,

2020, Converse moved for reconsideration. Dkt. 117.

11

12  ## II.   FACTUAL BACKGROUND

13       Converse's claims are based on the assertion that the YouTube application no

14  longer works on her Vizio TV. When Converse purchased her TV in January 2014, she

15  was able to stream YouTube content over the internet to the TV. Converse's TV uses

16  flash-based technology. Beginning in 2013, Vizio and other manufacturers had begun

17  producing TVs with a newer HTML5 application programming interface technology

18  which aligned with applications such as YouTube's technological updates. The parties

19  dispute whether and at what point Vizio knew that YouTube would cease supporting TVs

20  like Converse's which used the older flash-based technology. YouTube permanently

21  stopped functioning as an application on Converse's TV on June 26, 2017.

22       [1] ECF page numbering

Converse alleges that Vizio advertised and marketed that its TVs came with the ability to access applications such as YouTube when in fact, Vizio knew that in YouTube's terms of service YouTube expressly reserved the right to discontinue service at any time for any reason. Dkt. 54, ¶¶ 23–33, 35–37. Converse alleged that Vizio did not pass this information on to its customers. *Id.* ¶¶ 38–39. In other words, Converse alleged that Vizio made access to YouTube and other streaming applications a core part of its marketing strategy without informing consumers that YouTube may stop working on the TVs in the future and that YouTube could in its discretion stop making its content available on the TVs at any time. *Id.* ¶¶ 40–50.

## III.  DISCUSSION

Motions for reconsideration are governed by Local Rule 7(h), which provides as follows:

> Motions for reconsideration are disfavored. The court will ordinarily deny such motions in the absence of a showing of manifest error in the prior ruling or a showing of new facts or legal authority which could not have been brought to its attention earlier with reasonable diligence.

Local Rules W.D. Wash. LCR 7(h). "[A] motion for reconsideration should not be granted, absent highly unusual circumstances, unless the district court is presented with newly discovered evidence, committed clear error, or if there is an intervening change in the controlling law." *Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000) (quoting *389 Orange Street Partners v. Arnold*, 179 F.3d 656, 665 (9th Cir. 1999)).

Converse moves for reconsideration on three issues arguing manifest error when: (1) the Court failed to recognize her express contract claim; (2) the Court found her

1  implied contract claim failed for lack of a definite contract term and failed to establish

2  shared terms among class members; and (3) the Court found Converse could not

3  demonstrate unjust enrichment through a price/demand inflation theory or through

4  classwide affidavits. Dkt. 117.

5  **A.    Standard on Contract Claims**

6      Washington law distinguishes between contracts implied in fact and contracts

7  implied in law. *Young v. Young*, 164 Wn.2d 477, 483–84 (2008) (en banc) (citing

8  *Chandler v. Wash. Toll Bridge Auth.*, 17 Wn.2d 591, 600 (1943)). "Contracts implied in

9  fact are express contracts which arise from the facts and subsequently show a mutual

10  consent and an intention to contract with the other party." *Lynch v. Deaconess Med. Ctr.*,

11  113 Wn.2d 162, 165 (1989) (en banc) (citing *Chandler*, 17 Wn.2d 591). "A true implied

12  contract, or contract implied in fact, does not describe a legal relationship which differs

13  from an express contract; only the method of proof is different." *Eaton v. Engelcke Mfg.,*

14  *Inc.*, 37 Wn. App. 677, 680 (Wash. Ct. App. 1984) (citing *Johnson v. Whitman*, 1 Wn.

15  App. 540, 545 (1969)). "The burden of proving an express contract is on the party

16  asserting it, who must prove that the parties expressly agreed to each essential fact,

17  including the price, time and manner of performance." *Id*. at 681 (citing *Cahn v. Foster &*

18  *Marshall, Inc.*, 33 Wn. App. 838, 840–41 (1983)).

19      "To prevail on a contract claim, the plaintiff must show an agreement between the

20  parties, a parties' [sic] duty under the agreement, and breach of that duty." *Fidelity &*

21  *Deposit Co. of Md. v. Dally*, 148 Wn. App. 739, 745 (2009) (citing *Lehrer v. Dep't of*

22  *Soc. & Health Servs.*, 101 Wn. App. 509, 516 (2000)). "In interpreting a contract, the

ORDER - 4

court must try to ascertain the mutual intent of the parties at the time they executed the contract." *Rittman v. Amazon.com, Inc.*, 383 F. Supp. 3d 1196, 1202 (W.D. Wash. 2019) (citing *Viking Bank v. Firgrove Commons 3, LLC*, 183 Wn.App. 706 (2014)).

Contracts implied in law, or quasi contracts "arise from an implied legal duty or obligation, and are not based on a contract between the parties, or any consent or agreement." *Chandler*, 17 Wn.2d at 600 (citing *Bicknell v. Garrett*, 1 Wn.2d 564 (1939); *King Cty. v. Odman*, 8 Wn.2d 32 (1941)). "Quasi contracts are founded on the equitable principle of unjust enrichment which simply states that one should not be 'unjustly enriched at the expense of another.'" *Lynch*, 113 Wn.2d at 165 (quoting *Milone & Tucci, Inc. v. Bona Fide Builders, Inc.*, 49 Wn.2d 363, 367 (1956)).

### 1.    True Contract Claims

Converse argues that she sufficiently alleged and moved to certify a traditional breach of contract claim in addition to a contract implied in fact claim. Dkt. 117 at 3 (citing Dkt. 54 at 12–14; Dkt. 70 at 18–20). She argues that the Court failed to consider her traditional breach of contract claim and that the Court's order denying certification "does not address Plaintiff's theory of the case, her first cause of action, or the law relevant to this issue." *Id*. She argues that her theory is that Vizio promised consumers they were purchasing access to YouTube, making that promise "on its 'packaging, advertisements, marketing, [and on] its website.'" *Id*. (citing Dkt. 54, ⁋ 81). She also argues that Vizio failed to oppose her traditional breach of contract claim and the Court committed manifest error when it failed to conclude Vizio waived opposition to that claim. *Id*. at 3–4 (citing *Avilez v. Pinkerton Gov't Servs. Inc.*, 596 F. App'x 579 (9th Cir.

1   2015); *Samica Enters. LLC v. Mail Boxes Etc., Inc*., 460 F. App'x 664, 666 (9th Cir.

2   2011)).

3       Converse's motion for certification contains one section titled "Breach of Contract

4   Cause of Action." Dkt. 67 at 20–22.[2] The section describes one set of contract terms and

5   one theory of duty and breach—that Vizio made an offer of access to YouTube on its

6   packaging, that offer was accepted upon purchase, and "[t]he duty to continue to provide

7   access to YouTube was universally breached by the June 2017 depreciation of the app . . .

8   ." Dkt. 67 at 21. Considering the motion for reconsideration, Converse appears to argue

9   that Vizio created one promise through the words of its advertising and another promise

10  through the conduct of its advertising campaign. Even if Converse could be said to state

11  two separate breach of contract claims, both are express contracts, *Eaton*, 37 Wn. App. at

12  680, which require sufficient definiteness as to be enforceable, *Keystone Land & Dev.*

13  *Co. v. Xerox Corp.*, 152 Wn.2d 171, 179 (2004), and require a successful plaintiff to

14  prove both duty and breach, *Fidelity & Deposit Co.*, 148 Wn. App. at 745.

15      The theory of breach Converse describes in her motion would apply to a promise

16  offered in either manner. The theory is not that Vizio made a promise to provide access to

17  YouTube and never provided that access. It is that Vizio made a promise to provide

18  access to YouTube for the reasonable life of the TVs and breached that promise when

19  access ceased in June 2017. Dkt. 67 at 21. In other words, for a breach to have occurred,

20  Vizio's duty to provide access to YouTube had to extend at least past June 2017.

21

22          [2] ECF page numbering.

1  Converse's obligation at certification, to show how she is "prepared to prove" the

2  requirements of Fed. R. Civ. P. 23 are met with common evidence, *Wal-Mart Stores, Inc.*

3  *v. Dukes*, 564 U.S. 338, 350–52 (2011), is the same under either theory.

4      Converse argues that a contract implied in fact "does not necessarily require a

5  'meeting of the minds,' as long as the parties' intent to enter into a contract can be shown

6  through words or conduct." Dkt. 117 at 4 (quoting *DCIPA, LLC v. Lucile Slater Packard*

7  *Children's Hosp. at Stanford*, 868 F. Supp. 2d 1042, 1053 (D. Or. 2011) and citing

8  *Lynch*, 113 Wn.2d at 165). She thus argues that the Court erred in relying on *Bushbeck v.*

9  *Chicago Title Ins. Co.*, Case No. C08-0755JLR, 2011 WL 13100725 (W.D. Wash. 2011),

10 which described a "meeting of the minds" requirement to find a sufficiently definite

11 contractual obligation. *Id.* at 5.

12     Converse is correct that the Court overlooked the application of authority on the

13 objective manifestation theory of contracts to a contract implied in fact. Dkt. 117 at 5

14 (quoting *Rittman*, 383 F. Supp. 3d at 1202–03 (express contracts are analyzed based on

15 "the reasonable meaning of the contract language instead of the subjective intent of the

16 parties.")). Therefore, it is possible that Vizio and the class members could have an

17 enforceable contract with the terms Converse describes despite different subjective

18 understandings of how long Vizio's obligation to provide YouTube access would last.

19 However, the Court would still have to be able to discern through the parties' "objective

20 manifestations of mutual assent," *Keystone*, 152 Wn.2d at 179, that Vizio's obligation

21 was ongoing at the point it was breached.

22

1   Regarding her contract implied in fact claim, Converse argues that the only

2   relevant evidence on the existence of a "reasonable life of the product" contract term is

3   the 5,900 complaints Vizio received when YouTube access terminated. Dkt. 117 at 5. In

4   support of its opposition, Vizio explained that number of complaints it received (which it

5   argued was around 5,500) represents 0.13% of the approximately 4.3 million putative

6   class members. Dkt. 92 at 16 (citing Dkt. 94, ¶¶ 4–5). Evidence of the complaints,

7   representing such a small portion of the class, is at most minimally persuasive as to "the

8   mutual intent of the parties at the time they executed the contract." *Rittmam*, 383 F. Supp.

9   3d at 1202. Regarding the traditional contract claim, Converse may intend to argue a

10  reasonable life of the product term could be discerned from Vizio's statements in

11  packaging, advertising, marketing, and on its website. *See* Dkt. 117 at 3.

12   It is Converse's burden to show she is prepared to prove her claim, and the

13  evidence she put forward in support of the existence of a duty that was breached by the

14  June 2017 depreciation of the app did not allow the Court to be confident she was

15  prepared to prove the existence of a contract that covered her theories of duty and breach

16  on a classwide basis with common evidence. This conclusion is not altered under the

17  proper objective manifestation standard, and thus was not manifest error. Similarly, even

18  if the Court had found Converse had clearly alleged a traditional breach of contract claim,

19  it would not have certified that claim for the same reasons. Converse cites multiple places

20  class members may have seen marketing language but does not sufficiently explain how

21  she was prepared to prove with common evidence that the marketing language

22  communicated that Vizio's duty to provide access to YouTube extended past the alleged

1   breach. In sum, it was not manifest error to deny certification of Converse's breach of

2   contract claim whether styled as a traditional breach of contract or a breach of contract

3   implied in fact.

4   **B.   Quasi-Contract or Unjust Enrichment**

5   The Court understood Converse to assert two theories of recovery in support of

6   her unjust enrichment claim: (1) Vizio sold the TVs for more than they were worth

7   through deceptive advertising and should return those funds to the class (a price/demand

8   inflation theory) and (2) equity requires Vizio to compensate class members for the value

9   of a streaming device in order to restore the advertised functionality to their TVs (a

10  deception theory).

11  Regarding her price/demand inflation theory, Converse argues that the Court

12  improperly focused on how she would show damages when controlling Ninth Circuit

13  precedent holds that individualized damages issues do not defeat class certification. Dkt.

14  117 at 7 (citing *Leyva v. Medline Inds., Inc.*, 716 F.3d 510, 515–16 (9th Cir. 2013)).

15  Converse is correct that "the need for individualized findings as to the amount of

16  damages does not defeat class certification." *Vaquero v. Ashley Furniture Indus., Inc.*,

17  824 F.3d 1150, 1154 (9th Cir. 2016) (citations omitted). However, the Ninth Circuit has

18  explained that it "applied this understanding in cases where there existed a common

19  methodology for calculating damages." *Doyle v. Chrysler Grp., LLC*, 663 F. App'x 576,

20  579 (9th Cir. 2016) ("*Doyle*"). As examples, the Circuit in *Doyle* cited *Leyva*, 716 F.3d at

21  514, where the defendant's "computerized payroll and time-keeping database would

22  enable the court to accurately calculate damages and related penalties for each claim,"

1 and *Pulaski & Middleman, LLC v. Google, Inc.*, 802 F.3d 979, 989 (9th Cir. 2015), where

2 the plaintiff's proposed restitution calculation employed "[the defendant's] Smart Pricing

3 ratio, which . . . set[s] advertisers' bids to the levels a rational advertiser would have bid

4 if it had access to all of [the defendant's] data . . . ." *Id.* Converse did not put forward a

5 similar methodology in this case.

6         Furthermore, any model supporting a 'plaintiff's damages case *must be consistent*

7 with its liability case.'" *Nguyen v. Nissan N. Am.*, 932 F.3d 811, 817 (9th Cir. 2019)

8 (quoting *Comcast Corp. v. Behrend*, 569 U.S. 27, 35 (2013) (additional citations

9 omitted)). "In short, '[u]ncertainty regarding class members' damages does not prevent

10 certification of a class as long as a valid method has been proposed for calculating those

11 damages.'" *Id.* (quoting *Lambert v. Nutraceutical Corp.*, 879 F.3d 1170, 1182 (9th Cir.

12 2017), *rev'd on other grounds*, 139 S. Ct. 710 (2019)).

13         It was not manifest error for the Court to conclude, like in *Kelley v. Microsoft*

14 *Corp.*, No. C07-0475 MJP, 2009 WL 413509, at *9 (W.D. Wash. Feb. 18, 2009),

15 certification is not warranted due to failure to establish predominance when the plaintiff

16 does not put forward a proposed calculation that would show the misrepresentation

17 alleged, rather than other factors, drove the price/demand inflation. While the question of

18 whether the defendant received a benefit could predominate over the injuries to multiple

19 plaintiffs, the Court cannot stand on that conclusion when the plaintiff does not put

20 forward a calculation method that isolated sales which would have been made without the

21 challenged conduct. *Kelley*, 2009 WL 413509, at *9; *see also Ward. v. Apple, Inc.*, No.

22 18-16016, 2019 WL 5957405, at *1 (9th Cir. 2019) (district court appropriately denied

1   certification when plaintiff's expert asserted he could calculate damages using standard

2   economic techniques but did not put forward model for court to evaluate). The Court

3   found the same problems with Converse's lack of a calculation methodology for a

4   price/demand inflation theory—without such a methodology, the Court could not be

5   confident that the common issue of Vizio's benefit would predominate. Further, the Court

6   could not be confident that the damages case on price/demand inflation was consistent

7   with the liability case. Dkt. 116 at 18 (citing *Blough v. Shea Homes, Inc.*, No. 2:12–CV–

8   01493 RSM, 2014 WL 3694231, at *12 (W.D. Wash. July 23, 2014)); *see also Doyle*,

9   663 F. App'x at 579.

10        Regarding her deception theory, Converse argues that when the Court considered

11   her proposal to use classmember affidavits, it properly accepted her argument that

12   affidavits could establish exposure to the allegedly deceptive advertising, but improperly

13   discounted her argument that the affidavits could establish that class members relied on

14   the deceptive advertising. Dkt. 117 at 7 (citing Dkt. 116 at 19–20). She argues that the

15   Court disregarded the breadth of what could be accomplished through affidavits. *Id.*

16        The Court considered Converse's argument about affidavits in the context of its

17   prior findings that "there is a causation-like inquiry for certain kinds of unjust enrichment

18   claims." *Weidenhamer v. Expedia, Inc.*, No. C14–1239RAJ, 2015 WL 7157282, at *12

19   (W.D. Wash. Nov. 13, 2014) (citing *Kelley v. Microsoft Corp.*, 251 F.R.D. 544, 559

20   (W.D. Wash. 2008); *In re Phenylpropanolamine (PPA) Products Liab. Litig.*, 214 F.R.D.

21   614, 620 n.8 (W.D. Wash. 2003)). The Court was not satisfied that the affidavit proposed

22   went far enough in showing how the alleged misrepresentation caused the purchasing

1   decision or in showing how the alleged misrepresentation caused injury when it did not

2   address the issue of the reasonable life of the product extending through 2017. While

3   reasonable jurists may disagree with this conclusion, it was not manifest error particularly

4   when Converse first raised the affidavit proposal in her reply, depriving Vizio of the

5   opportunity to respond.

6                                    **IV.   ORDER**

7          Therefore, it is hereby **ORDERED** that Converse's motion for reconsideration,

8   Dkt. 117, is **DENIED**.

9          Dated this 3rd day of June, 2020.

10

11

12                                        _____
                                          BENJAMIN H. SETTLE
                                          United States District Judge

13

14

15

16

17

18

19

20

21

22